The next case is United States v. Freeman. Let me just make sure we have counsel. Mr. Brian. Good morning, your honors. Okay. You can see me and hear me. And Ms. Richards. Good morning, your honors. All right. So, Mr. Brian, you've reserved two minutes for rebuttal. So that gives you eight out of the gate. And then we'll get to two more at the back end. Floor is yours. Thank you. There's one issue before this court on this appeal. And it deals with Mr. Freeman's request that he be permitted to withdraw his guilty plea based on an undisputed fact that he was misinformed on the mandatory minimum sentence of supervised release. And the issue goes to whether here it was harmless error or not harmless error. Mr. Freeman contends that it was not harmless error for at least three reasons. One is that we're talking about a mandatory minimum penalty. And this court has repeatedly held that errors in the mandatory minimum penalty, whether imprisonment or supervised release is presumptively significant to the decision making as to whether to plead guilty. Can I interrupt for a second, though? I mean, it seems to me part of the problem here is that your client never said that. It seems that he never said I wouldn't have pleaded guilty had I known that the mandatory supervised release term was 10. What he really seemed to say is that I've lost confidence in my lawyer because he missed something like that. And I now I'm having second thoughts. Well, and that's not the same thing, right? Well, Judge Sullivan, I looked at the government's brief carefully. And then I looked at the record very carefully here. And and the motion for to withdraw the guilty plea, I submit fully covers the different grounds. And in addition to rule 11 violation we're talking about here, if you look at first of all, Mr. Harrington, he's the assigned attorney who was asked to represent him on this issue. And he clearly covers in his affidavit that as as one of the grounds that asserting a rule 11 violation and that it was based on his being told that it was a at least five years when in fact it was at least 10 years. The second thing, though, is I'm sorry, but I mean, I thought defense counsel himself said he didn't know whether the error made a material difference in Freeman's plea decision. That's what he said. Yes, I saw that in the oral argument. I would say, though, that he went on. I think that he went on to say that that it was a difference here, certainly in in Mr. Freeman's affidavit. Also, he covers multiple things in his affidavit. One is about receiving ineffective assistance of counsel. Second is what was said in the plea agreement. And he says specifically in his affidavit that he was told in the plea agreement was at least three years. The ineffective assistance in his affidavit pertained to it went through his conversation with his retained attorney in which he understood through that conversation that he would get the mandatory minimum sentences of 20 years imprisonment and five years supervised release. But critically, also, if you look at the end of his affidavit, this is Mr. Freeman's affidavit. It says that he is seeking to withdraw not only based on what he has said in the four foregoing part of the affidavit, but also what Mr. Harrington, his assigned attorney, said in the motion. And in the motion, he covers all the grounds here. So I would say that you have an oral argument statement, but it shouldn't be taken out of context. If you look at a whole, Mr. Harrington's affidavit is very clear about Rule 11 violation here. And Rule 11 specifically saying that there has to be a statement that as to any mandatory minimum penalty. Now, that, of course, applies to both imprisonment and supervised release. But this is the situation in which the pre-sentence report identified the error, and yet there was no objection to the pre-sentence report that was initial. In fact, the statement was we had no objections to the pre-sentence report, right? We look at the case law here. We see that when we're talking about, and this is, they're different. One thing I'd like to just, in answer to your question, Judge Sullivan, is I think it's important. As I looked hard at the case law here, I've been on the CJA panel for the court for 25 years. And as I looked at the case law here, I had to go over and over to try to make sense of what it meant. How do you articulate the standard that applies here? And I think that the correct statement comes out of Westcott and Harrington as to what the test is. And the test is that to look at any, what is the fact and did it have an effect on the decision to plead guilty or not? And then that's clear, but then becomes clear. We need to look at what, how did the court, this court in different cases, then make that determination of whether that test was met or not met. And I think the best way to articulate it is to say that this court considered various factors and not all factors are present in each case. Some factors are more important than others. And this court has also looked at a combination of factors. Now I would say, what I'm just saying there is a, what I believe is the correct distillation of the cases. So now in answer to your question, Judge Sullivan, is that there is a factor that this court has looked at among other factors. And one is whether a motion to withdraw the guilty plea has been made. In this case, it has been. Now, if we look at this and we say, okay, you're getting into the question of delay really more than whether the motion was made. But early on, whether there was an objection. What we don't know in this case, we know in the record that the pre-sentence report, and we know with respect to the objections, no objection was made, but that's often the attorney doing the objections who don't know if his attorney, who already made a mistake here about the supervised release term, even discussed it with Mr. Freeman. What we do know is that Mr. Freeman was told in court, all right, there is an error here. What do you want to do? And he came back three days later, which is very fast, and said, I want to withdraw. So the judge said, well, wait a minute, let's see, you know, let's get you some counsel. Maybe you don't want to do that. Let's go through this all. And then a motion is finally made. And then it is several months later, but the attorney says, look, any delay here, it was me, it was my business schedule. It wasn't him. He's been consistent, always wanting to withdraw. So I would submit that factually under this case, these things are really not relevant. It was his intent early on. Can I interrupt for a second, Mr. Bryan? I'm sorry. That's the legal point. You seem to concede that under Harrington, it's your burden to persuade the court that the defendant's decision making was affected by this error. But I mean, it seems to me that the Second Circuit is a little bit all over the place on this, and that there's some other cases that suggest it's the government's burden to prove that it's harmless error beyond a reasonable doubt. So what is the standard as far as you're concerned? Well, I would say standard review. I think we are dealing with de nouveau, first of all. And the reason I think when we're not, why I say de nouveau, even though that we're covering factual facts, we're dealing with undisputed facts. So the question is, what's the legal import of the particular facts that we have here? One fact, undisputed, is that we have an incorrect statement, misinformation as to the mandatory minimum sentence. By the way, that factor, in the case law, across the case board, is incredibly important. I would say almost can independently stand as a basis for saying it is not harmless error. We look at Harrington. Any of the cases that where you have an error of the mandatory minimum sentence, they've always said, I believe every single one has said not harmless error. So it's, but then this court has then looked at other factors. So you have, for example, Harrington, and it's a good example, that case Harrington, because here in Harrington, it said that there was a two-year delay in making the motion. And yet this court said, that's not dispositive. Why? Because the factor of it's the that it is such a, as this court, I'm using its word saying, it is an extremely strong inducement to plead guilty. Or, yeah, an inducement to plead guilty. What am I dealing with in this situation? So we have that, we're not talking about a minor error, we're talking about that doubled the term of supervised release from five to 10 years. I will say in one, I'm just speaking as an officer to the court here of things openly of, I looked at it, looked at the case and said, you know, so one thing that stuck, that popped out at me was, there's also another factor that talks about, is it, is he worse or better off? Now that's, that factor is not present in all cases. That's why it's not like you would say, okay, I'm going to look at all of these things. Now we do have that here, but you have cases like Ellis, Harrison, they did not rely on whether the defendant was worse or better off. They relied on the mandatory minimum error. So, but in terms of worse or better off, the question here, and I, I think it's a question for suppression. And that is, what do you look at then to determine whether someone is worse or better off? Do you look at the time that the plea is entered? And what is the view of a defendant at that time? When they find out later what, what it is, if that's the view, then here, Mr. Freeman is worse off because he thought he was going to have five years, he gets 10 years. If you say instead that you can look at the sentence, actually imposed later in sentencing to see whether they're worse or better off. Well here, if you take that view, then the government's argument is, well, no, he's not better off. He's neutral. If you accept the government's argument is true. And what happened here is that you have the first step act that came into play after the fact, after the plea of guilty, that reduces the, the term of imprisonment, mandatory minimum term from 20 years to 15 years. So then what the court said was, okay, I'm going to look at the aggregate of the prison term and the supervised release term. So initially, if we look at the aggregate, it was 20 years plus five years, 25 years. Now, when he's sentenced, he has, with the benefit of the fair first step act, he has 15 years plus 10 years. He's got 25 years. He's not worse off. Right. That's a mistake and we shouldn't go down that road. Yeah. I would say again, it has to do with this view. What do you count? And I, I submit that the view is you look at the time of sentencing. What are the facts that affect decision-making at that time? At the time of plea, right? I'm sorry. Yes. At the time of plea, you would, you would look at what were the factors affecting the decision to plead guilty at that time. The first step act didn't exist at that time. So it was not. Well, we'll hear what the government has to say and you can respond to that in rebuttal. Yes. Thank you. All right. We've gone over quite a bit, but we'll hear from you for two minutes after we hear from Ms. Richards. Thank you. Thank you. Okay. Ms. Richards. Good morning, your honors. Thank you. With regard to the conversation that just took place, just one thing that I need to note or point out first off is that the no mention was made of the significant benefits obtained in entering this guilty plea. So whether or not in part of that calculus, whether or not to plead guilty or to withdraw the guilty plea, what I didn't hear was the discussion regarding or any information regarding the significant other charges that could have been placed against Mr. Freeman based on his conduct. So here the benefit. So if the charges are really bad, you can just ignore rule 11 altogether. Is that what you're saying? No, not at all, your honor. Just with regard to the discussion of whether or not he would have or wouldn't have, when the court started its questioning was asking whether or not this was a matter of having second thoughts or whether or not he would have not pled guilty. But for this error in the supervised release term, I didn't hear anything that the question he was facing was if I withdraw the guilty plea, if the guilty plea is off the table and then it's not just a matter of fixing the supervised release term and deciding whether or not to enter it, the government has choices to make then too. And that's whether or not to continue down the road with other charges that could be brought here. This was an early resolution. Everybody pled guilty, all of his co-defendants, and it saved the government time and effort. And that's something that's recognized and part of the proper decision-making for the government and its plea bargaining position. Can I ask you something? Judge Sullivan was asking the other counsels about the standard here and who bears the burden of persuasion or proof on this? It seems, can we just start from the, I think the basic proposition everyone agrees with is that there was a Rule 11 violation. Do you agree with that? A Rule 11 violation? Yes. The judge gave the wrong information. The judge said it was a mistake at the time. There was a Rule 11 violation. So are we asking then whether this violation affected the defendant's substantial rights under Rule 11H? Then we could, yes. Is that the operative question here? I believe so. Okay. Which I do want to add parenthetically, I was surprised to see that that issue didn't seem to be addressed at all in the government's brief. It was dealt with as a completely different issue, this notion of mutual mistake, which didn't seem to be the issue that was briefed in the blue brief or addressed by the district court, but that's another issue. But if we're talking about Rule 11H here, whose burden was it in the district court in the first instance to deal with that issue? Was it the government's burden once the error was raised and the defendant made his motion to withdraw the plea to prove that it did not affect the defendant's substantial rights? So that would mean the government's burden to show by whatever standard that the defendant would have pled guilty anyway, or was it the defendant's burden to prove that he would not have pled guilty? So who bore the burden on that before the district court? The defendant had the burden initially, correct, to show that there was, to make a motion to show that there was a basis to withdraw the plea. Right. Now we know. He filed a motion. He says there's a Rule 11 violation. So at that point, who has the burden of showing either the defendant's, does he need to prove to the district court, I would not have pled guilty, or at that point with a violation in hand, was it the government's burden to show that he would have pled guilty? My understanding is it's the defendant's burden at that point, that's where he failed. I just want to take that step by step. So what's the authority for that? That's the United States versus, I'm going to say Rosen, just to make sure though. Rosen? I'm looking at the abuse of discretion standard that's put in place, that's in play in Rosen. Okay, but abuse of discretion is the, I'm not talking about the appellate standard of review. I'm talking about what was the standard that the district court was supposed to apply? Because whatever standard of review we have on appeal is going to be an overlay on it, right? So I'm just asking at the district court level, do you have a case, because it was not clear to me from the briefs, who bore the burden at that point? Because it seems to me that's the decision that we're going to be reviewing. Whether there's an overlay of deference on top of that, whether we have to defer to how the district court resolved that or not is a secondary question. But what's the initial skim coat there? Well, I'm afraid based on your honor's initial statement that it's not adequately addressed in the government's brief, that pointing you out to pages 11 and 12 of my brief isn't what you're looking for. But if I could just point out there that it's the stringent standard involved in withdrawing a plea, that the standard, that a plea withdrawal is allowed, but in doing so, that undermines confidence integrity judicial procedures, and there's the line of cases that reevaluation of the government's case against him or the penalty that might be imposed is not a sufficient reason to permit withdrawal of a plea. So starting from there, I'm sorry. But this is a rule 11 problem. You've already conceded it's a rule 11 problem, right? Well, that's where it is, your honor. Yes. With regard to whether or not that problem is one, the mistake was made. The mistake was then brought to the court's attention and the parties and the PSR. So I think this isn't as clear as a mistake of factor, trying to think of what the more typical cases, but where the mistake, I mean, to call it a mistake, I think I'd like to just backtrack just half a step to say, here, there was no mistake with regard to the ultimate term that could have been imposed. It was the maximum term of life was always on the table. Yeah, but you can't net things out, right? You can't say, I mean, if somebody faces a maximum life sentence of imprisonment, right? Whatever the charge may be, I don't think we would have a case law saying, and therefore, because you could potentially go to prison for life, any mistake with respect to a misstatement of supervised release is always and everywhere immaterial, because that would be the implication of your suggestion, right? Well, I think that's the difference. As long as you can go to prison for life, who cares about the whole supervised release thing? Mandatory minimums wouldn't matter at all if the life sentence was what trumped everything, right? Well, it's a different problem for sure, but I think that's where the court was focusing on the fact that the Rule 11 mistake or the mistake in the Rule 11 complete colloquy, I don't know how to call it a quasi, it's not, I agree with the court that there was a, I know that there was a problem. I understand the problem that was the mandatory minimum, but to call it a, the type of mistake that renders the entire process improper and unfair isn't right. The demonstration at that point of, is on the, I'm sorry, the demonstration that it was unfair is up to the defendant to make. And that's why in this instance, where it's not one that wasn't outside, it wasn't something that was well outside the realm of possibilities for what could happen here, that the mistake, as I'll continue to call it, of course, but the mistake wasn't one that rendered the entirety of the proceedings unfair. So it's a weird one. My understanding here is that we were eventually trying to get to, is this the kind of mistake that would have led this defendant to make a different decision on the day of his guilty plea? I don't think it is, Your Honor. You don't think that's the question? Or you don't think he would have made that? I'm just asking about the operative question here, not the answer to the question yet. Oh, I'm sure. Yes. I'm sorry. My mistake. Yes. I think we're in agreement. Well, you tell me, is that the question that we should be asking is, would the defendant, based on this error, have made a different decision and opted not to plead guilty on the day of his plea had he been properly informed about the supervised release term? Is that the government's view? That's the operative question here? Yes. And that's what the district court addressed in its decision. Yes. So, right. So that just comes back to me to say, is it then your position that the defendant, even when we have a Rule 11 violation, it's his burden to convince the court that he would not have pled guilty had he known that? Or is it the government's burden because this is properly preserved and it was raised in a timely manner? Is it the government's burden to show that he would have pled guilty? And I don't know how you answer either one of those questions, sort of, but I guess I still want to get at who had the burden and why, when we know that there's a Rule 11 violation, who has the burden of showing whether the defendant would have done something differently given that, given correct information? Right. Given the nature of the error here, Your Honor, I don't want to parse. I know that this could lead to a lot of different what-ifs and if-thens, but given the nature of the violation here, where it was something that was known to the defendant and the question of voluntariness is on the table, whether or not he knew he could have been sentenced to a supervised release term up to a specific term, and that term necessarily included the 10-year term that was required by the statute, then I think the burden remains on the defendant to show that he wouldn't, as the court properly analyzed, whether or not he would have entered the guilty plea absent a mistake. And here, again, as I started off with, what's missing from the calculus, as was discussed during my colleague's argument, is all the benefits that he obtained by pleading guilty. And that's serious and significant. So from the ground up, the government has met, even if the court finds it's the government's burden, the government's met that burden. You're saying whatever the burden, whether it's the government or the defendant, the outcome wouldn't be different in this case. Correct. And so what's the state of the record with respect to Mr. Freeman's assertion that he wouldn't have taken this deal had he known about the longer mandatory minimum term of supervised release? Well, that's the voluntariness bit that was addressed in the district court's decision. So whether or not he knew, but also given the significant benefits obtained that was known to the parties, and that was stated in the plea agreement, that he would obtain the acceptance of responsibility adjustment, that this was by, this entirety of the plea was by information, not by, it was a one count. I just want to make sure I'm not saying that wrong, that it was a one count information here, not an indictment. If I'm wrong, I'm sorry. But either way, the point's made that it was something that did not encapsulate the entirety of the charges that he faced, he could have faced without the plea. I mean, do you agree that this is kind of a big deal, that misstating the mandatory minimum term of supervised release is a problem? It makes everybody look bad? Do you agree with that? It was not, no, yes. I don't, this was not one that I'd like to pick up and look at. No, I don't like this case for that reason. But I do believe that the parties went through it when it was brought to the court's attention before sentencing, which is good to the benefit of the entirety of the process here. It was brought to the party's attention in the PSR. As Your Honor noted, Judge Sullivan, there was no immediate objection to that PSR, even though right there it said that the term of supervised release was different than what was in the plea agreement. There, I do not, I'm not suggesting that there was a long time that it collapsed. I'm not suggesting that. I understand my colleague's point with regard to it having been made. But it certainly was not made upon receipt. There were no objections filed to that PSR. So it leads to the one who brought it to everybody's attention. And the judge is the one who invited the motion to withdraw the plea, right? Right. But that goes, and then the defendant took up on. Right. And that goes to the genuine, the genuineness of that claim that he would have not pled guilty. That again, ignores the entirety of the benefits to him that were obtained by pleading guilty. This disagreement. He raised it in a pretty timely fashion. I mean, you know, once it's actually flagged for the guy, he pretty quickly says he wants to withdraw. It seems to me that the bigger problem for him is that when his lawyer is asked, well, why, what would he have done? He says, well, I don't know what he would have done. I have no idea what he would have done. And that seems like that's the harder problem for the defendant is that statement on the record. Like, well, who knows if it's material? He just wants to withdraw his plea and just see, but not because he particularly wants to go to trial. He just, he just wants to withdraw because, and that sort of is, I think, a difficulty for the defendant because it seems like the state of the record now is that you have an affirmative statement of, of, of a lack of any reason. It would be different though. It strikes me if the defendant said, well, look, I've got a long history of recidivism. Every time I get out of jail, I get arrested. And you know what? I'd rather just get a prison term and be done with it. And I don't want to be on the hook for supervised release because I just know I'm going to fall into bad habits and I'm going to get arrested over and over and over again. Right? I mean, you've seen, there are some defendants who are like that. They're like, you know what? Just give me the time. I don't want probation hanging over my head. I don't want supervised release. Give me the time to get out of here. I mean, it seems to me that he may have a problem because he didn't say anything like that. He didn't give any reason why supervised release would have mattered to him. But it seems like in the abstract, it's, it could be a problem. Well, I want to agree with your honor fully and ask if there's any more questions. Otherwise, I'll rest on my brief. All right. Let's hear from Mr. Brian. He maybe wants to pick up right where Judge Nardin left off. Mr. Brian, you've got two minutes. I think you're muted, Mr. Brian. I was saying a good question. I was thinking about how do I answer that? Well, what I would say is, and thinking about it, the standard, the test articulated, I believe is an objective standard, not a subjective standard. So if we look at Westcott, the words that are used is what would reasonably affect a defendant's decision to plead guilty. So we're looking at objective facts, not his subjective, what would he have done or not done subjectively. And that's consistent with this court's case law, where it's looking at objective facts. They're saying, okay, if it's a mandatory minimum sentence, we don't have to say, you have any evidence of him saying, well, that affected me. That affects everybody. That is a highly significant fact that would reasonably affect any defendant in a decision to plead guilty. But you don't think there's an individual inquiry as to whether this defendant would be inclined to not plead guilty? Do you think it's an objective defendant's standard? Well, I'm doing my best to address what Judge Nardini has said, and actually also you, Judge Sullivan, because we have the statement on the record where the counsel's going during the argument. I don't know what he would have done. And so again, that's not what the test would be. The test would be, what are we dealing with objectively? We're dealing with an error in the mandatory minimum penalty. We're dealing objectively with a motion to withdraw. We do know on the record, we don't need to get behind why Mr. Freeman said he wanted to move to withdraw. The fact of moving to withdraw soon after learning of the error, this court has said is evidence of it affected his decision making. Oh, wait, wait. If he had said, and he came pretty close to saying it through his lawyer, that I was misinformed about the mandatory minimum term of supervised release, but that doesn't matter to me. What really matters to me is that my lawyer is an idiot and missed it. And so I want to start over. Mr. Freeman, he didn't say that in his affidavit. That's the state of the record. Your view is nonetheless, he gets his plea back? Well, I look carefully at his affidavit. I would say that it in total was saying, not just, it was saying, piggybacking on what his lawyer said. That's in his affidavit saying, I am doing this for this reason. So he said, for example, the language was in part, it's because what he told me. Well, there were other things as reasons why he was moving to force sufficient facts. Now, by the way, turning to your question about what's the burden of proof, and I would submit in thinking about it, that really the burden is first, is there an error? I mean, that would be common across the board when you're dealing with any appellate error, any error that's brought up on appeal. And of course, the appellant has that burden. But once there is an error established, who is the party who is saying, so what? Who is saying you, court, can ignore this because it didn't matter? I would submit who that is. It's the government saying it. Wait, wait, didn't you say the opposite in your brief? I don't believe so. I've looked at the standard of review. I'm not sure that I said... In your brief, you said that Freeman bears the burden of showing that a district court's error had an effect on his decision to plead guilty. I'm not recalling it exactly, Your Honor. And as I think about it, as we're talking about it, I don't think that that would be the case. In terms of whether it's harmless error or not, certainly the burden initially was there an error he would have, but is it harmless? I think typically... I know also in the brief I've talked about how this court, there's a whole line of cases about how strictly this court construes violations of Rule 11. I do notice, and this is under the standard of review, I say a Rule 11 violation is reviewed for harmless error. I don't say, and this is on page 33 of my brief, I don't say who has the burden. But I would also say... Look at page 40 of your brief. You don't have to do it now, but I mean, I just think it seems to me you're saying that you can see that your client bears burden of showing that a district court's error had an effect on his decision to plead guilty. Well, I'm citing there, I believe, Westcott, which is then citing Harrison, and I'm quoting there. So what I would simply say is, I would refer to Harrison and Westcott as to what those cases say or don't say about who has the burden of proof. I think in the harmless error context, I believe it makes sense that once there's an error, the burden shifts, because it's the other party then is saying to the court, it doesn't matter, and this is why. So they should have the burden to be saying if it's harmless. Unless the court has any other question. Well, I think we've kept you both long enough. This is an inquisitive panel. So thank you both for your time and your efforts. We'll reserve decision.